

# THE ATTORNEY GENERAL
## OF TEXAS

**JOHN L. HILL**
**ATTORNEY GENERAL**

AUSTIN, TEXAS 78711

December 7, 1973

The Honorable James U. Cross
Executive Director,
Texas Offshore Terminal Commission
701 Congress Avenue, Suite 302
Austin, Texas 78701

Opinion No. H- 178

Re: Authority of the Texas
Offshore Terminal
Commission to develop
a plan for onshore faci-
lities to accommodate
super-tankers

Dear Mr. Cross:

You have requested our opinion as to whether it is possible to develop
a plan for onshore facilities to accommodate super-tankers under the mandate
given your Commission by Chapter 12 of the Texas Water Code (Acts 1972,
62nd Leg., 4th C. S., ch. 14, p. 17).

An answer to your question requires an understanding of the nature
of the Texas Offshore Terminal Commission.

The Legislature plainly stated its policy and intention in § 12.001 of the
Water Code:

> "It is the determination, policy and intent of the
> Legislature that the first priority of the Texas Offshore
> Terminal Commission is to develop a plan including the
> site location for an offshore terminal to accommodate
> supertankers at the earliest possible time." (Emphasis
> added)

After calling for the creation of the Commission, and providing for its
membership and operation, the Code in § § 12.061 and 12.062, sets out the
general responsibilities to be implemented:

p. 812

"Section 12.061.  In General

"The commission shall formulate general policy
to govern the agency and its activities.  The commis-
sion has the powers and duties specifically prescribed
by this chapter and all other powers necessary or con-
venient to carry out its responsibilities.

"Section 12.062.  Development of Plan

"(a) The commission shall develop a plan leading
to the development of deep draft harbors or terminals,
either by the State of Texas, private interests or by a
combination of public and private entities.  The plan
shall contain specific means by which the terminals may
be financed and shall provide for cost studies as to the
optimum development.  The plan shall further contain,
but not be limited to proposals for the use of facilities
developed; sites considered for the facilities; design of
the facilities; proposals for operating the facilities and
for the maintenance of the facilities.  The plan shall
also contain a separate proposal for steps to be taken
to insure the optimum protection of the environment.
The plan shall include consideration of the legal juris-
diction for construction, maintenance and operation of
the terminal facility; the legal aspects of financing and
ownership of the facility; determination of responsibility
and limits of liability for spills, pollution and other
involvements resulting from operation of the terminal;
necessary legislation to create an offshore terminal
authority or other entity as a vehicle for the operation of
the terminal; and any other important legal problems and
considerations which must be answered before such an
offshore terminal should be constructed.  The plan shall
also include socio-economic data to determine what this
facility will do for the State's economy, what will happen
to the economy of the State if the port is not built, and

what will be the dollars-and-cents benefits that the facility will bring about and how these will compare to its cost.

"(b) The commission may contract with local governments, regional planning commissions, planning agencies, and shall contract will colleges and universities in the state in preference to other sources when such colleges or universities have a better or equal capacity to render the service; and may further consider and contract with any other qualified and competent persons to assist the commission in developing and preparing the plan, but design and construction of the offshore port would reside within the private sector. This philosophy is in keeping with the legislative intent expressed in HCR 138, 62nd Legislature, Regular Session, 1971."

The Commission is instructed to carry out research "it considers advisable and necessary" (§ 12.063), to coordinate its work with other agencies having complementing or overlapping interests [§ 12.064(a)], and to make "necessary or convenient" contracts (§ 12.065).

The ultimate responsibility of the Commission is spelled out in § 12.066:

"(a) When the commission has prepared and examined the completed plan it shall hold such public hearings as may be necessary concerning the plan to determine if all aspects have been given adequate consideration. After the hearing the commission may amend the plan if in its opinion there is a necessity for such action and shall formally adopt the plan.

"(b) The commission shall present the plan to the first session of the Legislature occuring after the adoption of the plan. The commission shall also cause to be prepared such suggested legislation as may be necessary and desirable for the implementation of the plan."

Our consideration of the Act leads us to the conclusion that the Legislature was _primarily_ concerned with having the Commission develop plans for an offshore terminal.  If, as a result of its research, the Commission should determine that an offshore facility would not be physically possible, or would be economically unsound, or that an onshore facility would have advantages far outweighing those of an offshore terminal, the plan submitted by the Commission may include recommendations with reference to an onshore as well as an offshore terminal.

In § 12.067, the Savings Clause of this Act, it is stated:

> "Nothing herein shall be construed in any way
> to limit, impair, change or curtail the power, autho-
> rity and activities of existing port authorities, harbor
> authorities or navigation districts in the State of Texas,
> but all power, authority and activities now held and
> exercised by those various authorities or districts in
> the State of Texas are hereby specifically reserved
> to them; and none of the statutory law pertaining to
> those existing authorities or districts is amended,
> changed or repealed by the provisions hereof."

Since there are existing navigation districts and port authorities in this State which have the power to plan, construct, maintain and operate port facilities onshore (see § § 60.32, 60.101, et seq., Texas Water Code, V. T. C. S.), it was apparently contemplated by the Legislature that they should continue to exercise these powers and duties notwithstanding the creation of the Texas Offshore Terminal Commission.  The Commission was, in our opinion, created by the Legislature primarily to fill the void in the law with respect to the planning for offshore facilities which could not be undertaken by existing port authorities, navigation districts, and harbor authorities, although it did not preclude the Commission's consideration of onshore facilities where interference with existing authorities and districts would not result.  Section 12.064 directs cooperation with such agencies.

## SUMMARY

The Texas Offshore Terminal Commission is charged with the _primary_ responsibility of developing plans for

offshore terminal facilities. If, as a result of its research, the Commission should determine that an offshore facility would not be physically possible, or would be economically unsound, or that an onshore facility would have advantages far outweighing those of an offshore terminal, the plan submitted by the Commission may include recommendations with reference to an onshore as well as an offshore terminal.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

LARRY F. YORK, First Assistant

DAVID M. KENDALL, Chairman
Opinion Committee